# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| VIVENNE V. VASQUEZ-MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-0700 (ABJ) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiff Vivienne V. Vasquez-Mills served as an Assistant Principal at Bruce Monroe at Park View Elementary School from 2010 to 2013. In this lawsuit, she alleges that her supervisors discriminated against her on the basis of her national origin when they decided not to renew her contract in 2013.

Defendant, the District of Columbia, has moved for summary judgment. Def. District of Columbia's Mot. for Summ. J. [Dkt. # 21] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. [Dkt. # 21] ("Def.'s Mem."). It submits that in 2013, the leadership of Bruce Monroe decided that it no longer required the services of a traditional assistant principal, and that it needed an Assistant Principal for Literacy instead to assist the school with its literacy issues. According to defendant, because plaintiff was not qualified for the new position, her contract was not renewed.

The motion for summary judgment has been fully briefed, and the Court held a hearing on the motion on September 20, 2017. Plaintiff took the position in her pleadings that there was direct evidence of discrimination that precluded the entry of summary judgment in this case. Pl.'s Mem. of P. & A. in Supp. of Opp. to Def.'s Mot. [Dkt. # 26] ("Pl.'s Opp.") at 13–14. But the Court has found that the bulk of that evidence is either inadmissible hearsay or irrelevant to the pending

claim of national origin discrimination. The Court further finds that notwithstanding the one statement that remains that would be admissible as the statement of a party opponent, there is no dispute as to any material fact, and defendant is entitled to judgment as a matter of law. Plaintiff herself has testified that there was a non-discriminatory reason underlying the decision not to renew her contract, and she has come forward with no admissible evidence that would show bias on the part of the individual she has agreed was behind the decision. Also, if one were to move forward to consider the legitimate, non-discriminatory explanation proffered by the defense, plaintiff has not pointed to facts that would carry her burden to show that reason to be pretextual. Therefore, the Court concludes that plaintiff has failed to produce sufficient evidence that would enable a reasonable juror to find that defendant discriminated against her.

## BACKGROUND

**I.   Factual Background**

Plaintiff, who is of Puerto Rican descent, was hired at Bruce Monroe Elementary School as a New Teacher Mentor in 2009. Def.'s Statement of Material Facts Not in Dispute [Dkt. # 21] ("Def.'s SOF") ¶¶ 4–5; Pl.'s Resp. to Def.'s SOF [Dkt. # 26-12] ("Pl.'s SOF") ¶¶ 4–5. In that role, she spent approximately three days per week at Bruce Monroe where she would observe new teachers and mentor them during their first year of teaching. Def.'s SOF ¶¶ 6–8; Pl.'s SOF ¶¶ 6–8.

The administrative staff at Bruce Monroe was sufficiently impressed with plaintiff's work as a New Teacher Mentor that when an assistant principal position became available at the end of the 2009–10 school year, plaintiff was encouraged to apply. Def.'s SOF ¶ 11; Pl.'s SOF ¶ 11. She ultimately received the position, and she was selected by Dr. Marta Palacios, the principal, to serve as an assistant principal beginning during the 2010–11 school year. Def.'s SOF ¶¶ 13, 16; Pl.'s SOF ¶¶ 13, 16.

Plaintiff was supervised by Dr. Palacios. Def.'s SOF ¶ 14; Pl.'s SOF ¶ 14. The next level supervisor was Dr. Amanda Alexander, the Instructional Superintendent for a group of twelve schools that included Bruce Monroe. Def.'s SOF ¶¶ 17–20; Pl.'s SOF ¶¶ 17–20.

Dr. Palacios knew – from the time that she met plaintiff – that plaintiff was Puerto Rican, and there is some evidence in the record to suggest that Dr. Alexander did as well. Def.'s SOF ¶¶ 24–27; Pl.'s SOF ¶¶ 24–27.

At Dr. Alexander's deposition, she testified that she has "always known that [plaintiff] was Puerto Rican." Dep. of Dr. Amanda Alexander (Dec. 14, 2016) [Dkt. # 21-3] at 13:20–21. But plaintiff disputed defendant's proposed statement of fact to this effect, pointing to her own deposition testimony. Pl.'s SOF ¶ 27, citing Dep. of Vivienne V. Vasquez-Mills (Dec. 6, 2016) [Dkt. # 29] ("Pl.'s Dep.") at 72:7–22. At the cited portion of her deposition, plaintiff was asked a very general question, and she gave a very general answer: "Q: Now, I presume . . . by the end of the first year as assistant principal, everybody knew you were Puerto Rican . . . would you agree? A: I don't know if everybody. I don't know if everybody knew." Pl.'s Dep. at 72:7–13. So while she is claiming national origin discrimination, it is not wholly clear from plaintiff's testimony whether it is her contention that Dr. Alexander was one of the people who knew of her national origin.[1]

Bruce Monroe is unique within the District's public school system. Because the majority of the student body is learning English as a second language, the curriculum is conducted in both English and Spanish. Def.'s SOF ¶¶ 2–3; Pl.'s SOF ¶¶ 2–3. In addition, Bruce Monroe students have long struggled with low literacy scores. Def.'s SOF ¶ 41; Pl.'s SOF ¶ 41.

---

1     This is important if plaintiff is predicating her case based on discrimination by Dr. Alexander, but in the end this odd contradiction in the testimony did not form a part of the basis for the Court's decision.

Within the D.C. Public School system, principals and assistant principals serve one-year appointments, and they are eligible for reappointment at the end of every school year. Def.'s SOF ¶ 46; Pl.'s SOF ¶ 46. At the end of each academic year, principals and assistant principals are either reappointed, not reappointed but made eligible to pursue other opportunities within the school system, or not reappointed and made ineligible to pursue those other opportunities. Def.'s SOF ¶ 47; Pl.'s SOF ¶ 47.

Towards the end of the 2012–13 school year, D.C. Public Schools ("DCPS") created a new position, an Assistant Principal of Literacy ("APL"). Def.'s SOF ¶ 38. A successful APL candidate was required to have demonstrated experience and training in both literacy and administration, and candidates had to meet certain special licensure requirements promulgated by the Office of the State Superintendent of Education. Def.'s SOF ¶¶ 39–40; Pl.'s SOF ¶¶ 39–40.

Dr. Palacios determined at that time that a transition from a traditional assistant principal to an APL would better serve the needs of Bruce Monroe students because the APL would focus on literacy growth. Def.'s SOF ¶¶ 50–51; Pl.'s SOF ¶¶ 50–51. So she decided – with the approval of Dr. Alexander and the DCPS HR department – to hire an APL instead of a traditional assistant principal for the 2013–14 school year. Def.'s SOF ¶ 52; Pl.'s SOF ¶ 52.

Because the 2013–14 school year budget had already been submitted, Dr. Palacios had to request a budget change to accommodate the move to an APL position; she submitted the necessary paperwork on April 30, 2013. Def.'s SOF ¶ 53; Pl.'s SOF ¶ 53.

These are all undisputed facts that go to the existence of a non-discriminatory reason for the decision.

Also around the end of the 2012–13 school year, Dr. Palacios recommended that plaintiff not be reappointed as the assistant principal of Bruce Monroe for the 2013–14 school year, and

plaintiff does not dispute that the decision was initiated by Dr. Palacios. Def.'s SOF ¶ 48; Pl.'s SOF ¶ 48. Dr. Alexander signed off on the recommendation, as did the Chancellor of DCPS, Kaya Henderson. Def.'s SOF ¶ 49; Pl.'s SOF ¶ 49.

According to plaintiff, she learned of the decision during a meeting with Dr. Palacios. Pl.'s Dep. at 135:7–136:1. Plaintiff testified at her deposition that Dr. Palacios told her that the decision to not renew plaintiff's contract "was not her decision" – "this was all Dr. Alexander . . . [and] you know that Dr. Alexander hates Puerto Ricans." *Id.* at 135:16–21. Palacios disputes that the statement was made. Dep. of Marta N. Palacios (Jan. 5, 2017) [Dkt. # 29-1] ("Palacios Dep.") at 73:3–22; *see also* Def.'s Mem. at 15 ("Dr. Palacios . . . denies telling [p]laintiff that Dr. Alexander disliked Puerto Ricans.").

On May 17, 2013, Dr. Alexander presented plaintiff with the letter that informed her that she would not be reappointed as an assistant principal at Bruce Monroe, but that she could seek other opportunities within the DCPS system. Def.'s SOF ¶¶ 54–56; Pl.'s SOF ¶¶ 54–56. While plaintiff could have applied for the APL position, she chose not to apply because she lacked the specialized literacy training that the position required, so she would not have been considered qualified for the role. Def.'s SOF ¶¶ 60–62; Pl.'s SOF ¶¶ 60–62. On July 19, 2013, Dr. Palacios selected Althea Bustillo as the new Assistant Principal for Literacy. Def.'s SOF ¶ 58; Pl.'s SOF ¶ 58; Ex. 12 to Def.'s Mot. [Dkt. # 21-4].

II.     **Procedural History**

Plaintiff filed this three-count lawsuit on May 7, 2015. Compl. [Dkt. # 1]. She alleged in Count I that DCPS engaged in age discrimination when it failed to re-hire her in 2013. *Id.* ¶¶ 45–51. In Count II, she alleged that the failure to renew her contract was discriminatory because both Dr. Alexander and Dr. Palacios were biased against Puerto Ricans. *Id.* ¶¶ 53–60. And in Count

5

III, she alleged that the District of Columbia interfered with her prospective economic advantage by not re-hiring her to other assistant principal positions. *Id.* ¶¶ 62–72.

On October 29, 2015, the Court granted defendant's motion to dismiss Counts I and III. Min. Entry (Oct. 29, 2015). The parties then engaged in a period of discovery. Defendant's motion for summary judgment was filed on February 17, 2017. Def.'s Mot.; Def.'s Mem. Plaintiff sought and received three extensions of the due date for her opposition, and when it was filed on April 17, 2017, it did not comport with Local Civil Rule 7(h)(1) or the Court's Scheduling Order. *See* Min. Order (Apr. 18, 2017). However, the Court granted plaintiff another opportunity to supply a conforming statement of facts, and a revised opposition was docketed on April 26, 2017. Pl.'s Opp. Defendant filed its reply on May 15, 2017. Reply to Pl.'s Opp. [Dkt. # 28] ("Def.'s Reply"). The Court held a hearing on September 20, 2017. Min. Entry (Sept. 20, 2017).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a

6

reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

**THE LEGAL FRAMEWORK FOR ANALYZING A DISCRIMINATION CLAIM**

Title VII of the Civil Rights Act of 1964 was enacted to implement "the federal policy of prohibiting wrongful discrimination in the Nation's workplaces." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013). The anti-discrimination provision prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a). As the D.C. Circuit has explained, to state a prima facie case of disparate treatment under Title VII's antidiscrimination provision, the plaintiff must establish two essential elements: "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008), citing 42 U.S.C. § 2000e-16(a).

At the summary judgment stage, the operative question under the Title VII anti-discrimination framework is "whether 'the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee'" on the basis of one of Title VII's protected characteristics, such as national origin. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013), quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

In some employment discrimination cases, there is no direct evidence of discriminatory intent. In those cases, where a plaintiff relies on circumstantial evidence to establish the employer's unlawful conduct, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006).

Under that framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Once a prima facie case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802; *Holcomb*, 433 F.3d at 896. If a legitimate, nondiscriminatory reason is given, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Holcomb*, 433 F.3d at 901.

But the "*McDonnell Douglas* framework applies only if . . . the plaintiff relies on an inference of discrimination." *Stone v. Landis Constr. Corp.*, 442 F. App'x 568, 569 (D.C. Cir. 2011), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). "Where the plaintiff provides direct evidence of discrimination, *McDonnell Douglas* is inapplicable." *Id.*

To qualify as direct evidence, a statement or remark must "itself show[] . . . bias in the employment decision." *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014), quoting *Ayissi-Etoh*, 712 F.3d at 576; *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011). If the plaintiff offers direct evidence of discriminatory intent, that evidence will "generally entitle a plaintiff to a jury trial." *Vatel*, 627 F.3d at 1247.

Finally, the direct evidence – like any evidence on summary judgment – must be admissible. "An affidavit or declaration used to support or oppose a motion [for summary

judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). So, while "sheer hearsay . . . counts for nothing" on summary judgment, summary judgment evidence need not be "in a *form* that would be admissible at trial, so long as it is "capable of being converted into admissible evidence." *Gleklen v. DCCC*, 199 F.3d 1365, 1369 (D.C. Cir. 2000) (emphasis in original), citing *Celotex Corp.*, 477 U.S. at 324.

## ANALYSIS

Plaintiff argues that she is entitled to a jury trial because she has come forward with a number of statements that amount to direct evidence of discrimination. While many of the alleged statements are inadmissible, one statement – Dr. Palacios's alleged statement to the plaintiff that Dr. Alexander was biased – would be admissible. So the Court must determine whether it constitutes direct evidence that creates a genuine dispute of material fact. If it does, summary judgment must be denied. But if the Court finds that it does not, the Court must then go on to consider defendant's stated non-discriminatory basis for the decision, and decide whether there is any other evidence in the record that would support plaintiff's burden to show that the decision to move to an APL position was a pretext for national origin discrimination.

I. **Plaintiff's evidence of statements allegedly made by Dr. Palacios about Puerto Ricans are not based on personal knowledge, and therefore, cannot defeat the motion for summary judgment.**

Plaintiff testified at her deposition that Dr. Palacios "frequently ma[de] disparaging remarks about Puerto Ricans." Pl.'s Dep. at 204:17–20. She testified that she heard that Dr. Palacios had described Puerto Ricans as "pushy," and she testified that Dr. Palacios had said to others: "the Puerto Ricans think they know everything," and "the Puerto Ricans are . . . not as good as they think they are." *Id.* at 204:17–22. However, while plaintiff testified that she "know[s]

9

that there were comments" made about Puerto Ricans, she was not present for any of the discriminatory remarks. *Id.* at 205:14–206:10.

Dr. Palacios, for her part, denies making these statements. Palacios Dep. at 42:6–16 (when asked by plaintiff's counsel whether she had ever "made comments that . . . gave offense to people," including Puerto Ricans, she responded, "I have never heard something like that in my life. Not about Puerto Ricans, not about any other nationality. Never, never, sir."); *see also id.* at 41:18–42:2 ("Q: [D]o you recall incidents when you were serving as Principal at Bruce Monroe when you made disparaging comments about Puerto Ricans? A: Never, I would never do that. Never. That is not in my character sir.").

Plaintiff attempts to corroborate her testimony with an affidavit from another Bruce Monroe teacher, Teresa Maisonet Menendez. Ms. Menendez avers in her declaration that she was offended by comments made by unidentified "others" at Bruce Monroe that disparaged Puerto Ricans. Decl. of Teresa Maisonet Menendez [Dkt. # 26-8] ("Menendez Decl.") ¶ 8.[2]

Plaintiff's testimony about Dr. Palacios's alleged discriminatory statements is not based on personal knowledge; plaintiff admits that she was not present for any of the comments, so the information would be inadmissible hearsay. Pl.'s Dep. at 205:14–206:10; Fed. R. Evid. 801(c), 802.[3] And Ms. Menendez's declaration contains no admissible evidence that gives rise to a genuine issue of fact since it does not identify whether it was Dr. Palacios, Dr. Alexander, or some

---

2     The Menendez declaration also includes a number of conclusory paragraphs about the declarant's apparent view that she too was discriminated against on the basis of her Puerto Rican heritage, *see* Menendez Decl. ¶¶ 8–10, and the declaration also contains inadmissible hearsay statements made to the declarant by other unknown DCPS employees who allegedly complained of similar mistreatment. *Id.* ¶¶ 11, 13.

3     Moreover, during her deposition, plaintiff did not even identify who supposedly did hear the statements.

other person not in plaintiff's chain of command who allegedly made discriminatory statements. *See* Menendez Decl. ¶ 8. So, as the Court ruled on the record at the hearing, those statements do not constitute direct evidence of discrimination, and they would be inadmissible at trial.

**II.     Even if Dr. Palacios made a racially insensitive remark about another racial minority, that evidence is not direct evidence of an intent to discriminate against Puerto Ricans.**

At her deposition, plaintiff also testified about an incident that took place when she was mentoring another DCPS employee. Pl.'s Dep. at 120:1–20. Dr. Palacios allegedly overheard plaintiff's conversation with this individual and chastised plaintiff for trying to help her; according to plaintiff, Dr. Palacios asked, "[d]o you know that she had an affair with a custodian, do you know that that black thing that you see over there, that's who she slept with?" *Id.* at 120:11–20.

That statement would certainly be odious and inappropriate if it was said. But the statement is not direct evidence of the alleged discrimination in this case because it does not bear on whether Dr. Palacios or Dr. Alexander harbored discriminatory animus against plaintiff because of her Puerto Rican national origin, nor does it bear on the question of whether that animus played a role in the decisions to move to an APL position and to not renew plaintiff's contract. *See Wilson*, 753 F.3d at 247 (direct evidence is evidence that shows "bias in the employment decision"), quoting *Ayissi-Etoh*, 712 F.3d at 576. Therefore, the Court ruled at the hearing that the statement would be excluded as irrelevant.

**III. Dr. Palacios's statement about Dr. Alexander's alleged hatred of Puerto Ricans is admissible, but the dispute over whether it was made does not give rise to a genuine dispute of material fact that precludes summary judgment.**

Once the Court had ruled on all of that evidence, the sole question left to decide was whether Dr. Palacios's statement offering her characterization of Dr. Alexander's biased state of mind required a trial. This involved a decision about whether the statement is admissible, whether it rises to the level of direct evidence of discriminatory intent in the challenged decision, and whether the dispute over whether the statement was made is material given plaintiff's agreement that Dr. Palacios, and not Dr. Alexander, made the decisions in question and plaintiff's own testimony about why she made them. The Court scheduled the hearing to probe these questions, and plaintiff had little to offer.

In her opposition to the motion for summary judgment, plaintiff pointed to a conversation in which Dr. Palacios told her that she would not be rehired. Plaintiff testified at her deposition that the day before she was formally notified that she would not be reappointed, she was alerted by Dr. Palacios that the decision had been made. Pl.'s Dep. at 135:1–9.

According to plaintiff, Dr. Palacios told her at the meeting that the decision to terminate her "was not her decision" – "this was all Dr. Alexander . . . [and] you know that Dr. Alexander

hates Puerto Ricans." Pl.'s Dep. at 135:12–21. This statement is admissible.[4] It is also disputed; Dr. Palacios has denied that Dr. Alexander harbored anti-Puerto-Rican animus. Palacios Dep. at 73:3–22 ("[Dr. Alexander] didn't make the comments."). It does not appear that Dr. Palacios was asked directly at her deposition if *she* made the statement attributed to her by the plaintiff, but in its memorandum in support of the motion for summary judgment, defendant states that "Dr. Palacios . . . denies telling plaintiff that Dr. Alexander disliked Puerto Ricans." Def.'s Mem. at 15.

Plaintiff also testified that she learned that Dr. Alexander "had this thing against Puerto Ricans," from another teacher, Rebecca Begazo, Pl.'s Dep. at 162:1–3, but Ms. Begazo has since expressly denied that she told plaintiff that Dr. Alexander harbored anti-Puerto-Rican animus. *See* Ex. 1 to Decl. of Pl. [Dkt. # 26-9]. And plaintiff could not introduce Begazo's alleged statement to her through her own testimony since it would not qualify as a statement of a party opponent.

In *Morris v. McCarthy*, 825 F.3d 658 (D.C. Cir. 2016), the Court of Appeals explained that while "an isolated race-based remark unrelated to the relevant employment decision could not, without more," permit a jury to infer discriminatory intent, occasionally even those kinds of statements could "support a verdict for a Title VII plaintiff." *Id.* at 669–70.

---

4    As the defense agreed at the hearing, Dr. Palacios's statement to plaintiff would be admissible as the non-hearsay statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D) (a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed"). Courts have held that an employee – even a non-decisionmaker – can make non-hearsay admissions if that employee participates in some way in the adverse employment action. *See, e.g.*, *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005); *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 818, 822 (7th Cir. 2011) ("For an employee's statement to constitute an admission, she need not have been personally involved in the disputed employment action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action.") (citations omitted). It is undisputed that Dr. Palacios recommended to Dr. Alexander that plaintiff's contract not be renewed, Def.'s SOF ¶ 48; Pl.'s SOF ¶ 48, so Dr. Palacios's statement to plaintiff is admissible.

In this case, plaintiff testified that Dr. Palacios told her that Dr. Alexander harbored bias against Puerto Ricans. But even if the testimony is assumed to be true for purposes of this motion, that testimony was simply Dr. Palacios's characterization of Dr. Alexander's state of mind; plaintiff has not come forward with any admissible evidence that Dr. Alexander ever said or did anything to reveal her allegedly discriminatory animus. So it is questionable whether one could characterize this single statement as direct evidence of discrimination in the employment decision. But the Court finds that whether it is or it isn't, defendant should prevail on its motion.

First of all, notwithstanding the deposition testimony in which plaintiff said that Dr. Palacios told her that it was Dr. Alexander's decision, plaintiff formally agreed in her responses to defendant's statement of material facts as to which there is no genuine issue that it was Dr. Palacios who made the decision to bring in an Assistant Principal for Literacy and that it was Dr. Palacios who made the decision not to renew plaintiff's contract. *See* Def.'s SOF ¶¶ 48–52; Pl.'s SOF ¶¶ 48–52; *see also* LCvR 7(h)(1). And plaintiff has not proffered any admissible evidence that Dr. Palacios was biased. So the dispute over the statement attributed to Dr. Palacios is not material because even if it was made, it does not betray any bias on the part of the decision maker.

This is consistent with plaintiff's testimony about why she was fired. When the plaintiff was asked, under oath, why she believed she was not rehired, she did not attribute the decision to Dr. Alexander or to bias on the part of any supervisor; she attributed the decision to Dr. Palacios's interest in grooming another teacher – Althea Bustillo – to ultimately replace her as principal.

Q: "In your opinion, why were you not reappointed at Bruce Monroe?"

A: "Because Palacios just wanted to leave Bustillo in charge, that's all."

Pl.'s Dep. at 161:17–20.

Given all of those circumstances, the Court turned to plaintiff at the hearing to ask:

> So, my first question to you is, what is left of this case? Once plaintiff agreed that it was Dr. Palacios' decision and she identified a nondiscriminatory basis for the very decision that she's questioning, how can I find that any reasonable juror would conclude that discrimination is at work?

Draft Hr'g Tr. at 16:1–6. In response, counsel for plaintiff did not take issue with the Court's assessment. Instead, he explained that the case had been filed in good faith at the outset, but that the hoped-for evidence of discrimination from other witnesses had failed to materialize.

> COUNSEL: I think having heard your assessment of the statements that she reported regarding other – treatment of Puerto Ricans and your . . . finding that the comments she directly overheard regarding [Palacios's] disdain for an African American fellow employee, that that doesn't have any bearing on whether it's more likely than not that she did have animus toward Puerto Ricans . . . I don't know. My client did respond to the question in that way.
>
> * * *
>
> COUNSEL: I had assessed those statements that my client reported that did identify Dr. Palacios as a person who bore animus, that there was sufficient ground to believe we should proceed . . .
>
> THE COURT: Well, if the people who she heard it from –
>
> COUNSEL: Would have testified.
>
> THE COURT: But all we have now is her saying somebody told me that they heard something. You know, I have the hearsay rules that I have to apply.
>
> COUNSEL: I understand. . . . I regret I was unable to persuade individuals who I was authorized under the professional rules to communicate with to come forward. I made the appropriate efforts as counsel.
>
> THE COURT: This is not a criticism that the case was brought. This is not a criticism of you. . . . My only question is, really, putting aside all of that, when you say to the plaintiff why were you fired and she said she preferred Althea Bustillo, she was grooming her to replace her.
>
> COUNSEL: Which might be inappropriate, but doesn't bear evidence that she believed, frankly, that it was discriminatory.
>
> THE COURT: So we have that.

> COUNSEL: I understand that.
>
> * * *
>
> COUNSEL: [T]he way in which Dr. Palacios went about this very much struck my client as discriminatory. In the context now, as best she knows and we did investigate, none of those other individuals had brought claims.
>
> * * *
>
> COUNSEL: And as you related in relating what we had presented, this issue of Rebecca Begazo, a fellow employee who had been at the school for quite some time, and what she initially chose to share with my client and then once requested by the DCPS supervising attorney to speak with the District's attorney, expressed – denied that she had said that and made allegations against my client that she sought to harm her . . .
>
> * * *
>
> COUNSEL: But there's not more there.
>
> * * *
>
> COUNSEL: I owe the Court candor.
>
> * * *
>
> COUNSEL: I can't invent new things.

Draft Hr'g Tr. at 16:7–21:2.

### IV. There is no evidence of pretext.

If one does not consider the Dr. Palacios statement about Dr. Alexander to be direct evidence, but rather, one considers it to be part of a set of circumstances that plaintiff claims give rise to an inference of discrimination, the question becomes whether plaintiff has identified any evidence that the decision to fill her Assistant Principal slot with an Assistant Principal for Literacy was a pretext for national origin discrimination against plaintiff. A plaintiff alleging that his employer acted for an unlawful discriminatory reason may avoid summary judgment by identifying evidence from which a reasonable juror could find that the employer's proffered, lawful reasons for acting were pretextual, or, in other words, "unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "Showing pretext, however, requires more

16

than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). It is not sufficient to "show that a reason given for a job action [was] not just, or fair, or sensible," *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), quoting *Pignato v. Am. Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994), nor is it sufficient to challenge "the correctness or desirability of [the] reasons offered." *Id.*, quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992). The plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were "phony." *Id.*, quoting *Pignato*, 14 F.3d at 349. And "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

Plaintiff contends that evidence of pretext arises from the fact that, to accommodate Dr. Palacios's decision to move from a traditional assistant principal to an APL, Bruce Monroe had to request a budget change after the budget had already been submitted. *See* Pl.'s Opp. at 14–18. It is plaintiff's position that what she characterizes as a deviation from DCPS's usual procedures – needing to request a change from an already-approved budget – is probative of

pretext. *Id.* at 15–16.[5] And at the hearing, plaintiff advanced a challenge to the "wisdom" of not reappointing her, in light of her "decade" of service. Draft Hr'g Tr. at 19:17–18.

Neither of these arguments are probative of pretext. First, the D.C. Circuit has held that "[a]n employer's failure 'to follow its own regulations and procedures, alone, may not be sufficient to support' the conclusion that its explanation for the challenged employment action is pretextual." *Fischbach*, 86 F.3d at 1183, quoting *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982). And second, the Court is not authorized to consider the wisdom of an employer's employment decision, only whether the employer honestly and reasonably believed that its decision was correct:

> To be clear, courts should not evaluate the reasonableness of the employer's business decisions, such as whether it made financial sense to terminate an employee who generated substantial revenue. . . . Rather, the factfinder is tasked with evaluating the reasonableness of the decisionmaker's *belief* because honesty and reasonableness are linked: a belief may be so unreasonable that a factfinder could suspect it was not honestly held.

*DeJesus v. WP Co.*, 841 F.3d 527, 534 (D.C. Cir. 2016) (emphasis in original). Plaintiff concedes that "the persistent challenge Bruce Monroe confronted in attempting to improve student proficiency in English" is "an admittedly critical component of the School's task." Pl.'s Opp. at 15.[6] In the absence of any evidence that the move to the APL position was not an honest and

---

5 Here, there is little or no evidence that there was any deviation from standard procedure. The budget for the 2013–14 school year had been submitted in late March of 2013. Def.'s SOF ¶ 53; Pl.'s SOF ¶ 53. Paragraph 38 of defendant's statement of undisputed facts posited that DCPS first created the position "towards the end of the 2012–13 school year," in reliance on the deposition transcripts of Dr. Alexander and Dr. Palacios, but those deposition excerpts do not nail down the date, and plaintiff disputed the statement of fact. *See* Def.'s SOF ¶ 38; Pl.'s SOF ¶ 38. However, plaintiff has not pointed to any evidence that Bruce Monroe had that information when it first submitted its budget, and it would be plaintiff's burden to come forward with the evidence of pretext.

6 In addition, the fact that plaintiff was not reappointed, but given the opportunity to seek other opportunities within the DCPS system, Def.'s SOF ¶¶ 47; 55; Pl.'s SOF ¶¶ 47, 55, is further proof that the District's reason for her termination was honest and reasonable, and not the product of discrimination.

reasonable attempt to address that proficiency gap, and in face of plaintiff's admission about the true reasons why another individual was offered the APL job, the Court finds that no reasonable juror could conclude that the decision to request a budgetary change was pretext for national origin discrimination.

## CONCLUSION

Even if one considers the record in its entirety in the light most favorable to the plaintiff, one cannot overlook certain undisputed facts. It was the decision to hire an Assistant Principal for Literacy to improve reading success at the uniquely multi-cultural Bruce Monroe that eliminated a regular Assistant Principal position for the next school year. This decision was made before the decision was made involving plaintiff, and there has been no evidence adduced to carry plaintiff's burden to prove that *that* decision was discriminatory in any way. In light of all of those undisputed facts and circumstances, and the other reasons set forth above, the Court agrees with the District that the disputed statement attributed to Dr. Palacios is not direct evidence of discrimination in the challenged employment decision, that the dispute over whether it was made is not material because it does not relate to the motivation of the agreed decision maker, and that plaintiff has not created a triable issue on the question of pretext.

Therefore, while it appears that plaintiff was a caring, committed, and competent public servant, who was dedicated to the welfare of the students she served, she has not come forward with sufficient evidence to persuade a reasonable jury that she lost her position to discrimination. Defendant's motion for summary judgment will be granted. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 29, 2017